68959. JAHNCKE SERVICE, INC. et al. v. DEPARTMENT OF TRANSPORTATION et al.

(322 SE2d 505)

DEEN, Presiding Judge.

Appellants Jahncke Service, Inc., and T. L. James & Co. (hereinafter collectively referred to as "contractor" or "contractors") entered into a contract in August 1971 with the State Highway Department (now known as the Department of Transportation and hereinafter referred to as DOT) for construction of 6.61 miles of highway embankment on Interstate 95 in Camden County, Georgia. Prior to bidding on the contract the appellants, along with other potential bidders, had been supplied with, *inter alia,* a report ("boring report" or "borrow pit report") on DOT's investigation of possible borrow pits from which materials for use in building the embankment could be obtained. DOT also obtained permission of the pits' owners for them to be used for that purpose and, additionally, obtained dredging permits from the U. S. Corps of Engineers. The boring report, which listed results of tests of the three pits, contained a clear and conspicuous statement that the results of the tests were not guaranteed, and an admonition to potential bidders that they needed to make their own tests before submitting a bid, or "proposal."

The contract between the two parties, DOT and the successful bidders (appellants here), consisted of the following documents: (1) Notice to Contractors; (2) the contractor's proposal, Special Provisions, Supplemental Specifications, Performance and Payment Bonds, the formal contract between DOT and appellants executed August 31, 1971, and documents contained in a bound volume entitled "State Highway Department of Georgia — Proposal"; (3) Standard Specifications of the State Highway Department of Georgia for the Construction of Roads and Bridges, January 1966, vols. 1 and 2; and (4) highway construction engineering plans, entitled "Plan and Profile of Proposed Jacksonville, Florida-Brunswick, Georgia, Interstate Road Construction Contract." The boring report bore on its face a statement that it was not part of the contract. As is customary in highway construction work, payment was to be made on a "unit/price" basis; that is, for a specified price per cubic yard, the contractors were to do all work necessary or incidental to performance of each unit of work.

Appellants assert that after work had gotten under way, the largest of the three borrow pits, which according to the boring report seemed capable of providing the major portion if not all of the required fill, did not produce adequate material of a quality acceptable

to DOT. Appellants further allege that DOT arbitrarily classified as unacceptable material which its boring report had indicated would meet the applicable standards. Consequently, appellants allege, they were forced to dig the pits to greater depths than they had anticipated, thereby allegedly incurring additional expense. Moreover, instead of the largest pit supplying all the materials needed (as the contractors apparently expected), appellants had to use material from both the remaining pits in order to obtain an adequate supply for the embankment. This process allegedly began in April of 1971; appellants did not bring it to DOT's attention, however, until late July of that year, when a letter to the State Highway Engineer from appellants set forth their claim for additional compensation. Other letters in the same vein were written the following August and October. DOT refused to consider this as "extra work" or as an alteration in the character of the work involving "a substantial change in the nature of the design or in the type of construction" which "materially increase[d] the cost of the performance," as defined in the Standard Specifications, §§ 4.03, 4.04. Therefore, under the contractual documents, DOT declined to authorize additional payment for this work.

Upon completion of the work contracted for, appellants filed a written claim for additional compensation for expenses incurred as a result of encountering unforeseen conditions during the construction process. DOT sought a declaratory judgment in the Fulton Superior Court as to the validity of the claim for additional compensation and subsequently moved for summary judgment.[1] See *Jahncke Service v. Dept. of Transp.*, 137 Ga. App. 179 (223 SE2d 228) (1976); *Jahncke Service v. Dept. of Transp.*, 134 Ga. App. 106 (213 SE2d 150) (1975). In November 1983 the court granted summary judgment to DOT. Jahncke and James appeal, enumerating as error this award of judgment, on the basis that there exist genuine issues of material fact which preclude summary adjudication. *Held*:

1. Provisions of the contract and related documents which are of particular significance to our review of the case at bar can be summarized in the following excerpts:

"Whenever an alteration in character of work involves a substantial change in the nature of the design or in the type of construction, a Change Order covering such alteration will be issued . . . If the alteration materially increases or decreases the cost of the performance, a Supplemental Agreement acceptable to both parties shall be executed before work is started on such alteration . . . In all other cases the work involved in all changes shall be performed on the basis of

---

[1] Appellants meanwhile filed an action against DOT in the Camden County Superior Court, seeking recovery of the additional expenses. DOT was granted an injunction forbidding prosecution of the Camden County action.

the Contract unit price and no Supplemental Agreement will be necessary." (Standard Specifications § 4.03A.)

"Extra work as defined in Section 1 herein shall be done by the Contractor in accordance with the Specifications and as directed, provided that, before any extra work is begun, a Supplemental Agreement or an Extension Agreement shall be signed by both contracting parties . . . No work performed by the Contractor shall be determined to be Extra work until it has been approved in writing by the State Highway Engineer . . . The Contractor shall waste or avoid any plastic clay strata or pockets, or other material not meeting the requirements for In Place Embankment. There shall be no payment for excavation and wasting of such material, either from sources shown on the plans or from those submitted by the Contractor." (Standard Specifications § 4.04.)

"A. Engineer's Decision and Estimates Final: The Engineer will decide promptly all questions related to the interpretation of the Specifications and the Plans and as to the acceptable fulfillment of the Contract by the Contractor . . . B. Engineer to Interpret Documents: Any doubt as to the meaning of the Contract, Plans or Specifications and any obscurity as to the work required under the Contract, Plans and Specifications will be explained by the Engineer." (Standard Specifications § 5.01A.)

"Contract Plans, furnished by the Department, consisting of general drawings and showing such details as are necessary to give a comprehensive idea of the construction contemplated, will be prepared by or under the direction of the Department . . . Data shown on such plans are not guaranteed to be correct; and the obligation is upon the Contractor, before making his Bid or Proposal, to make his own investigation. B. . . . [T]he Department does not guarantee that the information shown on the plans is correct, and the Department will not be bound thereby; therefore, before making his bid and submitting his proposal, the Contractor shall satisfy himself as to such conditions, materials, and structures existing on the project as is specified in Articles 2.05 and 2.06." (Standard Specifications § 5.03A.)

"If the Contractor believes that extra compensation is due him for work or material not clearly covered in the Contract or not ordered by the Engineer as extra work, the Contractor shall notify the Engineer in writing of his intention to claim such extra compensation before he begins the work on which he bases the claim. If such notification is not given, and the Engineer is not afforded proper facilities by the Contractor for keeping account of actual cost as required for Force Account, then the Contractor hereby agrees to waive the claim for such extra compensation." (Standard Specifications § 5.15.)

"The Department does not guarantee that the quantity or quality of acceptable material required can be obtained from any designated

source, and the failure of such designated sources to contain material in sufficient quantities or of acceptable quality shall not be the basis for any claim against the Department for extra compensation not provided for herein." (Standard Specifications § 6.01E.)

"The State Highway Department in making this borrow report available to Contractors assumes no responsibility for its accuracy. No claim will be considered if the Contractor relies on this information in his bidding or in his construction operations and finds that it is inaccurate. This borrow investigation report is not considered as a part of the Plans and Specifications or Contract on the job . . . Unstable Material — care should be taken to avoid pumping unstable material such as wood, roots, grass, humus, muck and heavy clays into the embankment. Heavy clays are especially a problem in this area." (Boring Report.)

"There shall be no payment for excavation and wasting of [unsuitable] material, either from sources shown on the Plans or from those submitted by the Contractor . . . The quantity of material shown on the plans as available in the borrow areas is not guaranteed by the State Highway Department . . . No separate payment will be made for the work described above and all costs pertaining to such work shall be included in the overall bid submitted." (Special Provisions.)

"Note: The data, together with all other information shown on these Plans, or in any way indicated thereby whether by drawings or notes, or in any other manner are based upon field investigations and are believed to be indicative of actual conditions. However, the same are shown as information only, are not guaranteed, and do not bind the State Highway Department in any way." (Engineering Plans.)

2. Appellants urge three theories under which, given a jury resolution of the alleged factual issues, they should be entitled to recover from DOT: (1) that DOT's rejection of certain materials taken from the borrow pits in effect substituted a higher standard of quality for that set forth in the informational and contractual documents and that this alleged upgrading constituted an alteration in the character of the work involving "a substantial change in the nature of the design or in the type of construction," and required the contractors to perform "extra work"; (2) that even if the rejected materials did not meet the contractual specifications, DOT's allegedly arbitrary refusal to accept them constituted "an alteration . . . involving a substantial change and required the contractors to perform extra work"; and (3) that whether or not the rejected materials met the contractual specifications, appellants are entitled to recover on theories of breach of warranty, tort, reformation based on mistake of fact, and *quantum meruit*.

Our examination of the voluminous record discloses no genuine

issue of material fact remaining in the case. Although the parties differ sharply in a number of particulars, none of the differences pertains to a substantial factual issue which should have been tried. Appellants have adduced no documentation of their allegations as to the suitability of materials rejected by DOT. They have offered neither the results of their own alleged tests of these materials, nor any expert testimony concerning such tests. The presumption is therefore authorized that the test results and testimony concerning them would, if adduced, be unfavorable to appellants. OCGA § 24-4-22; Green, Ga. Law of Evidence, 2d ed., § 32, p. 70; *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855 (294 SE2d 533) (1982); *Eddie Parker Interests v. Booth*, 160 Ga. App. 15 (285 SE2d 753) (1981). "When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial . . ." OCGA § 9-11-56 (e).

It is undisputed, moreover, that appellants were on notice as to the possibility of errors or discrepancies in the boring report and as to the necessity, before submitting a bid, of making an independent investigation rather than contenting themselves with relying on the boring report. The cited provisions of the contractual documents make it clear that problems of the sort appellant complained of were anticipated and were expressly provided for in the contract. Where the terms of a contract are clear and unambiguous, as in the instant case, and where there is no substantial issue as to material facts, construction of the contract is a question of law for the court, and there is nothing to be resolved by a jury. OCGA § 13-2-1; *Smiths' Properties v. RTM Enterprises*, 160 Ga. App. 102 (286 SE2d 334) (1981); *Nodvin v. Krabe*, 160 Ga. App. 310 (287 SE2d 236) (1981). In the instant case the court found as a matter of law that, under the unambiguous terms of the contract, appellants were entitled to no additional compensation for work performed.

Furthermore, we find no evidence of either a mistake of fact or a gross mistake such as would amount to bad faith. See, e.g., *State Hwy. Dept. v. W. L. Cobb Constr. Co.*, 111 Ga. App. 822 (143 SE2d 500) (1965); *State Hwy. Dept. v. MacDougald Constr. Co.*, 102 Ga. App. 254 (115 SE2d 863) (1960). As to the *quantum meruit* claim, any recovery must be based on the existing contract, or there can be no recovery at all. *State Hwy. Dept. v. Hewitt Contracting Co.*, 113 Ga. App. 685 (149 SE2d 499) (1966). Appellants' allegations as to the sufficiency of the Moreland affidavit are also without merit. OCGA § 9-11-56 (e).

The award of summary judgment was proper, and we find no error in the proceedings below.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 10, 1984 —
REHEARING DENIED SEPTEMBER 25, 1984

*Aubrey L. Coleman, Jr., Ewell P. Walther, Jr.*, for appellants.
*William B. Brown*, for appellees.