A90A0100, A90A0101. ATLANTIC WOOD INDUSTRIES, INC. v.
LUMBERMEN'S UNDERWRITING ALLIANCE et al.
A90A0102. RANGER INSURANCE COMPANY v. ATLANTIC
WOOD INDUSTRIES, INC.
(396 SE2d 541)

CARLEY, Chief Judge.

These appeals result from the following set of relevant facts: Appellant-plaintiff Atlantic Wood Industries, Inc. (AWI) was informed by the Environmental Protection Agency (EPA) that its Virginia wood-treatment facility had been determined to be a hazardous waste site under the Comprehensive Environmental Response Compensation Liability Act (CERCLA). Appellee-defendants Lumbermen's Underwriting Alliance (LUA), Insurance Company of North America (INA), Continental Casualty Company (CCC) and Ranger Insurance Company (RIC) were notified of EPA's determination, but they denied that coverage for the cost of any pollution cleanup measures existed under the respective primary and excess liability policies that they had issued. Thereafter, LUA initiated a declaratory judgment action in Virginia, seeking a declaration that it afforded no coverage to AWI. AWI then initiated the instant action in Georgia, seeking a

declaration that it was afforded coverage by LUA, INA, CCC and RIC, and also asserting breach of contract claims for the failure to provide it with a defense to the EPA administrative action. Cross-motions for summary judgment were filed. The trial court granted summary judgment in favor of LUA, INA and CCC, holding that, under the language of the policies that they had issued, there was no coverage. However, the trial court denied summary judgment in favor of RIC, holding that, under the language of its policy, there was coverage. In Case Nos. A90A0100 and A90A0101, AWI appeals from the grant of summary judgment in favor of LUA, INA and CCC. In Case No. A90A0102, RIC cross-appeals from the denial of its motion for summary judgment.

### Case Nos. A90A0100, A90A0101

1. LUA has moved that these appeals be dismissed as against it, on the ground that its Virginia declaratory judgment action, which was pending at the time AWI initiated the instant Georgia action, has since resulted in a final declaratory judgment that no coverage exists. However, the initial pendency of the Virginia declaratory judgment action did not serve to abate the instant Georgia action. OCGA § 9-2-45. Likewise, the subsequent finality of the Virginia declaratory judgment action is not a ground for dismissing the instant appeals. OCGA § 5-6-48 (b). Accordingly, LUA's motion to dismiss is denied.

2. The LUA, INA and CCC policies afford liability coverage for "damages," and it is their contention that AWI will incur no liability for "damages" by undertaking any remedial pollution measures that may be mandated by EPA. The issue of whether EPA-mandated pollution cleanup costs constitute "damages" within the coverage of the affected landowner's liability policy has been addressed in other jurisdictions, but not in Georgia. But see *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333 (380 SE2d 686) (1989) (holding that the EPA-mandated costs incurred by the owner of polluted property are within the coverage of a comprehensive general liability policy absent a clear and unambiguous pollution exclusion clause). Although AWI will incur the costs of undertaking the remedial pollution measures in Virginia rather than Georgia, the policies were delivered in Georgia rather than Virginia. Accordingly, the policies are to be construed as Georgia contracts. See *General Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350 (2b) (309 SE2d 152) (1983). The instant cases thus require resolution of an issue of first impression in this state: Whether, as a matter of Georgia law, the insured under a liability policy providing coverage for "damages" is afforded coverage for the costs that he incurs in undertaking such remedial pollution measures as are mandated by the EPA.

Several of those jurisdictions which have addressed the issue have held that there is no coverage. See, e.g., *Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A2d 16 (Me. 1990); *Continental Ins. Co. v. Northeastern Pharmaceutical &c. Co.*, 842 F2d 977 (8th Cir. 1988) (applying Missouri law); *Maryland Cas. Co. v. Armco, Inc.*, 822 F2d 1348 (4th Cir. 1987) (applying Maryland Law). However, the majority of jurisdictions has held that there is coverage. See, e.g., *Hazen Paper Co. v. USF&G Co.*, 555 NE2d 576 (Mass. 1990); *Minnesota Mining &c. Co. v. Travelers Ins. Co.*, 457 NW2d 175 (Minn. 1990); *C. D. Spangler Constr. Co. v. Industrial Crankshaft &c. Co.*, 388 SE2d 557 (N.C. 1990). After giving consideration to the holdings in the above-cited cases and others too numerous to cite, we are in agreement with our sister state of North Carolina that "the better reasoned decisions find that the term 'damages' as used in the coverage provisions of liability policies includes the type of expenditures under consideration." *C. D. Spangler Constr. Co. v. Industrial Crankshaft &c. Co.*, supra at 566 (II C). "We rest our decision . . . on the basis that the term 'damages' is not being used in its legal and technical sense in these policies. . . . [I]t is a term easily susceptible to more than one definition. Clearly, there is a specific, technical definition for the word ['damages']: 'payments to third persons when those persons have a legal claim for damages.' [Cit.] If the insurer intended that 'damages' have only this meaning, it should have so indicated in the policy. The insured would then have understood that cleanup costs incurred pursuant to government mandate were not covered, and would have been able to enter into other insuring arrangements. Because such a limiting definition was not included in the policy, we must conclude that the parties did not intend 'damages' to have a specific technical meaning in the insurance policy. Rather, they intended to use its ordinary meaning." *C. D. Spangler Constr. Co. v. Industrial Crankshaft &c. Co.*, supra at 568 (II C).

Such a construction of the instant policies is consistent with general principles of Georgia insurance law. " 'In construing an insurance policy, "(t)he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." (Cit.) "Where a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured. (Cit.)" (Cits.)' [Cit.]" *United States Fire Ins. Co. v. Hilde*, 172 Ga. App. 161, 163 (2) (322 SE2d 285) (1984). Moreover, such a construction of the instant policies is also consistent with the holding in *Claussen v. Aetna Cas. &c. Co.*, supra, that, in the absence of a clear and unambiguous pollution exclusion clause, the EPA-mandated costs incurred by the owner of pol-

luted property *are* within the coverage of a comprehensive general liability policy. "Under Georgia law, the risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer. [Cit.]" *Claussen v. Aetna Cas. &c. Co.*, supra at 337 (3).

It follows that the trial court erred in its construction of the instant policies. A layman, having insured himself against liability for "damages," without further definition or limitation, would reasonably conclude that he is protected from financial loss without regard to the legal basis upon which his liability for his loss might technically be premised. There is nothing in the instant policies to indicate an intent to exclude from liability coverage such financial loss as would be incurred by AWI in complying with EPA-mandated pollution measures.

3. Because the trial court's order granted summary judgment on the basis of the non-existence of coverage, it did not otherwise address the issue of the parties' entitlement to summary judgment as to AWI's remaining breach of contract claims for failure to provide a defense. AWI does not enumerate as error the denial of its motion for summary judgment as to those claims, and LUA, INA and CCC have filed no cross-appeal urging that, should coverage be found to exist, they would nevertheless be entitled to summary judgment as to AWI's claims for breach of contract to defend. LUA, INA and CCC have merely maintained their status as appellees, urging only that the trial court correctly granted them summary judgment as to the non-existence of coverage. Accordingly, our holding in these appeals must necessarily be limited to a reversal of the trial court's grant of summary judgment in favor of LUA, INA and CCC as to the coverage issue and to the trial court's denial of summary judgment in favor of AWI as to that issue. Compare *United States Fire Ins. Co. v. Capital Ford Truck Sales*, 257 Ga. 77 (355 SE2d 428) (1987). The issue of the parties' entitlement to summary judgment as to AWI's claims for breach of contract to defend can only be considered if, subsequent to this appeal, that issue is raised in the trial court and the trial court's ruling in that regard is enumerated as error in a future appeal.

### Case No. A90A0102

4. Although RIC's motion for summary judgment was denied, and the interlocutory provisions of OCGA § 5-6-34 (b) were not followed, RIC is nevertheless entitled to file this direct cross-appeal and enumerate the denial of its motion for summary judgment as error. See *Centennial Ins. Co. v. Sandner, Inc.*, 259 Ga. 317 (380 SE2d 704) (1989).

5. Insofar as the denial of its motion for summary judgment as to the existence of coverage under its excess liability policy is concerned,

RIC urges, in effect, an adoption of the same construction of the term "damages" that has been advanced by LUA, INA and CCC. That construction having been rejected in Division 2 of this opinion, it necessarily follows that RIC's excess liability policy *does* provide coverage insofar as the EPA-mandated pollution cleanup costs incurred by AWI exceed the threshold of the $50,000 limits of AWI's primary liability policy. Accordingly, RIC would be entitled to summary judgment as to the coverage issue only if the undisputed evidence of record showed that AWI's liability for those costs would be less than $50,000. No such showing was made and the trial court, therefore, correctly denied RIC's motion for summary judgment as to the existence of coverage.

6. Because the events for which coverage was afforded had occurred *prior* to any assignment of RIC policy to AWI, the trial court did not err in failing to grant summary judgment in favor of RIC on the ground that RIC had not consented to such an assignment. See *Pacific Ins. Co. v. R. L. Kimsey Cotton Co.*, 114 Ga. App. 411, 414 (3) (151 SE2d 541) (1966); *Canal Ins. Co. v. Savannah Bank &c. Co.*, 181 Ga. App. 520, 522 (4) (352 SE2d 835) (1987).

7. Unlike LUA, INA and CCC, RIC has filed a cross-appeal and does enumerate as error the denial of its motion for summary judgment as to AWI's breach of contract claims for failure to defend. Accordingly, the issue of RIC's entitlement to summary judgment as to these claims for breach of contract to defend must be addressed in the context of this appeal. See *United States Fire Ins. Co. v. Capital Ford Truck Sales*, supra.

Under the terms of the excess liability policy that it issued, RIC had no contractual duty to provide AWI with an *initial* defense in the EPA administrative action. The exhaustion of the $50,000 limits of AWI's primary liability policy was clearly made a condition precedent to RIC's duty as an excess carrier to undertake a defense of AWI. AWI urges that RIC was nevertheless contractually obligated to undertake the initial defense when the primary liability carrier denied coverage and that RIC's only recourse for having to assume this contractual obligation of the primary carrier would be to bring suit against the primary liability carrier alleging that carrier's wrongful denial of primary liability coverage to AWI. Although AWI's primary liability carrier had denied coverage, that carrier was named as an original party-defendant in this action and the record shows that, as against that carrier, AWI has settled its claims for declaratory judgment and breach of contract to defend. Accordingly, AWI is estopped to urge that RIC had the contractual duty to undertake the initial defense and that it would be relegated to asserting a claim over against the primary liability carrier for the wrongful denial of primary coverage to AWI. Having undertaken to enforce its own claims for

coverage and breach of contract to defend against its primary liability carrier, AWI would have a viable claim against RIC for breach of contract to defend if, but only if, the $50,000 limits of AWI's primary liability policy had been exceeded. See generally *United States Fire Ins. Co. v. Capital Ford Truck Sales,* supra.

In support of its motion for summary judgment, RIC introduced evidence showing that it has not received any notice from AWI that the $50,000 limits of AWI's primary liability policy have been exceeded. In opposition to RIC's motion, AWI neither introduced any evidence to show that such notice had ever been given to RIC nor did it disclose the terms upon which AWI had settled with its primary liability carrier, apparently because the terms of that settlement are deemed by AWI to be confidential. Since the undisclosed terms of the settlement agreement are accessible to AWI but not to RIC, a presumption would arise that those terms "would, if adduced, be unfavorable to [AWI]. [Cits.] 'When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial. . . .' [Cit.]" *Jahncke Svc. v. Dept. of Transp.,* 172 Ga. App. 215, 219 (2) (322 SE2d 505) (1984). Accordingly, the evidence of record not only demonstrates that RIC has never been notified of the satisfaction of the condition precedent to its contractual duty as the excess carrier to provide a defense to AWI, but said evidence also shows an unrebutted presumption that such condition precedent has not been satisfied because, under the undisclosed terms of the settlement agreement, AWI has presumably settled with its primary liability carrier for *less* than the $50,000 limits. It follows that the trial court erred in denying RIC's motion for summary judgment as to AWI's claim for breach of contract to defend.

8. The denial of RIC's motion for summary judgment as to the non-existence of coverage under the excess liability policy that it issued is affirmed. The denial of RIC's motion for summary judgment as to AWI's claims for breach of contract to defend is reversed.

*Judgments reversed in Case Nos. A90A0100 and A90A0101. Judgment affirmed in part and reversed in part in Case No. A90A0102. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 12, 1990 —
REHEARINGS DENIED JULY 25, 1990 — CERT. APPLIED FOR.

*Hunter, Maclean, Exley & Dunn, Arnold C. Young,* for Atlantic.
*Harman, Owen, Saunders & Sweeney, C. Dale Harman, Perry A. Phillips,* for Lumbermen's.

*Drew, Eckl & Farnham, W. Wray Eckl, Richard T. Gieryn, Jr., Jeffrey R. Hill, Benny C. Priest, Painter, Ratterree, Connolly & Bart, Paul W. Painter, Jr.*, for Ranger.

*Simpson & Tatum, John M. Tatum*, for Insurance Company of North America.

*Beckmann & Pinson, Joseph B. Barrow*, for Continental.