A93A0538. MILLER et al. v. TRANAKOS et al.
(434 SE2d 84)

BIRDSONG, Presiding Judge.

Appellants Miller sued Arthur P. Tranakos, a former attorney, for breach of contract, fraud and deceit, legal malpractice, breach of fiduciary duties, and cancellation of a note, and filed RICO claims. Appellants claim damages arising from a scheme devised by Tranakos for investment by the Millers and others for the purchase of "master sound recordings" made by famous recording artists, including Elvis Presley, to create tax shelters reflecting huge business losses. These tax exclusions, on Tranakos' advice, resulted in zero tax liability of appellants for several years until the Internal Revenue Service investigated and the investments were disallowed as legitimate tax shelters. Large penalties and tax assessments were exacted from appellants.

After appellants sued Tranakos and obtained a default judgment, they learned that Tranakos was trustee for a trust established by his father, Peter Tranakos, for Peter's five grandchildren, who were between the ages of seven and fourteen when Peter died in 1977. At the time of Peter Tranakos' death, the trust contained about $250,000 in stocks and property for benefit of Peter's grandchildren, including one share of stock in "The Snuggery," a defunct corporation formed by Arthur Tranakos and conveyed to his father, Peter. Arthur Tranakos began to manage the assets of this trust in 1979; as trustee, he sold all the stocks and bought a one-half interest in a rock quarry for $39,000. This is the only asset extant in the trust. The trust beneficiaries were not apprised of Tranakos' investments or dealings. In 1989 he was convicted and imprisoned for conspiracy in a tax evasion scheme. Thereafter, the oldest grandchild tried to trace the trust corpus. It appeared that over $70,000 in proceeds from sale of stock disappeared or was used by Arthur Tranakos personally.

The connection between appellants' claims and the Tranakos Grandchildren Trust is "The Snuggery," the corporation formed by Arthur Tranakos in 1969 to operate a restaurant. The restaurant closed and the corporation was dormant with no assets by 1973.

Tranakos transferred ownership of the one share of stock in The Snuggery to his father, Peter Tranakos; it had no value but as part of Peter's estate it was transferred to the Tranakos Grandchildren Trust. Arthur Tranakos sold the "master sound recordings" via The Snuggery.

The Tranakos Grandchildren Trust moved for summary judgment, contending it could not be liable for Arthur Tranakos' wrongdoing under the circumstances of the case. The trial court granted the motion, ruling: "The court finds and concludes . . . that it is uncontroverted that the trust itself never received any benefit from any funds, investments or contributions made by [appellants] to defendant Arthur Tranakos or to The Snuggery, Inc." The Millers appeal, asserting several theories of liability of the trust. *Held*:

1. On appellees' motion for summary judgment, the burden of establishing the non-existence of any genuine issue of fact is on the movant and all doubts are resolved against it (*Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107 (395 SE2d 592)); but once the movant has supported its motion for summary judgment, respondent must set forth specific facts showing a genuine issue for trial. *Atlantic Wood Indus. v. Lumbermen's &c. Alliance*, 196 Ga. App. 503, 508 (396 SE2d 541). We find no specific evidence from which a jury might conclude that, in the investment scheme affecting appellants, Tranakos was acting in his capacity as trustee of the trust, that the trust benefitted from Tranakos' schemes, or that the trust should be culpable for any other compelling reason. Where, e.g., appellants contend it is proved that the trust received $10,000 profits from The Snuggery/Elvis Presley Partnership, the record merely reflects Arthur Tranakos' confused deposition testimony concerning $10,000,000 as the alleged price for which the trust sold its interest in an Elvis Presley master sound recording to The Snuggery. Nowhere do appellants clearly show that the trust actually got $10,000,000, or $100,000, or even $10,000 in this scheme or any other.

Generally, trust funds may not be depleted by subjection to liability for negligence of or other tort by the trustee. *Burgess v. James*, 73 Ga. App. 857, 859 (38 SE2d 637). The mere fact that the trustee used trust funds to the detriment of third persons does not create liability in the trust; the trustee being the operator and controller of the funds, it is not to be presumed that the beneficiaries or owners of the trust corpus knew of any wrongdoing through use of trust funds. The proof of the trust's benefit from or complicity in the wrongful acts must be more than mere suspicion arising from circumstances including commingling of funds or other coincidence, and must point to specific culpability or, at least, a specifically proved unjust enrichment.

Appellants show masterfully that Arthur Tranakos wove a com-

plicated web and used The Snuggery as the vehicle for his schemes, but we find no evidence to justify holding the trust liable for Tranakos' misdeeds. According to the evidence, Tranakos manipulated the trust to his purposes, not vice versa, not acting for the benefit of the trust but using the trust for the benefit of himself. The trust appears as much, or more, the victim of Tranakos' wrongdoing as do appellants. *Miller v. Smythe*, 92 Ga. 154 (18 SE 46) does not apply; the trustee in that case was sued as landlord of a building, in which capacity he was *"duly authorized"* to act for the trust which owned the building. Nothing Arthur Tranakos did of a malfeasant nature to harm appellants was authorized by the Tranakos Grandchildren Trust, or benefitted it.

Appellants contend, and we generally agree, that public policy "cannot allow an attorney to form a corporation, place the corporation into a trust, act as president and trustee, funnel ill gotten gains to his children and permit the children to evade repayment of the money as so-called innocent beneficiaries." But this view is controlling only where the trust actually benefitted from the trustee's misdeeds or where some other equity, such as conspiratorial knowledge or unjust enrichment, authorizes invading the trust to satisfy the trustee's liability to others. To say otherwise would positively encourage the rifling of trust assets by a trustee. See, in principle, *Carr v. Tate*, 107 Ga. 237 (33 SE 47). The granting of summary judgment to appellee Trust was correct.

2. The trial court did not err in striking affidavits of three persons to the extent such affidavits recited evidence gleaned during their investigations and conclusions made thereon. *Cawthon Motor Co. v. Scheufler*, 153 Ga. App. 282, 285-286 (265 SE2d 96). Any portion of such affidavit which may be original evidence does not create a genuine issue of fact which, if decided in appellants' favor, would render the trust liable for Arthur Tranakos' misdeeds. See *Atlantic Wood Indus.*, supra.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED JUNE 25, 1993 —
RECONSIDERATION DENIED JULY 28, 1993 — 

*Moss, Clifford, Moss & Rothenberg, Robert A. Moss*, for appellants.

*Sutherland, Asbill & Brennan, Laura M. Shamp, John H. Fleming, Michael D. Bolen*, for appellees.