**BRIGGS & STRATTON CORPORATION,**
Plaintiff,

v.

**ROYAL GLOBE INSURANCE COMPA-NY, now known as Royal Insurance Company of America; and Transcontinental Insurance Company, Defendants.**

No. CIV.A. 597CV5692 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 25, 1999.

Daniel S. Reinhardt, David C. Vigilante, Brad L. Schoenfeld, Eric A. Szweda, Atlanta, GA, for Briggs & Stratton Corporation, A Wisconsin Corporation, plaintiff.

Linda B. Foster, Atlanta, GA, Cynthia Ruth Mather, Thomas Tobias Locke, Ross, Dixon & Masback, L.L.P., Washington, DC, for Transcontinental Insurance Company, defendants.

## ORDER

OWENS, District Judge.

Defendant Transcontinental Insurance Company has filed a motion for partial summary judgment. Transcontinental argues that Wisconsin law applies to construction of its liability policy issued to defendant Briggs & Stratton ("B & S"), and that under Wisconsin law, remediation conducted by B & S pursuant to a United States Environmental Protection Agency ("EPA") Order and Notice of Violation of the Georgia Department of Natural Resources Environmental Protection Division ("EPD") does not constitute "damages" under the policy. Transcontinental further asks the court to find that the EPA Order and EPD Notice of Violation are not "suits" under the terms of the policy.

B & S has filed a cross motion for partial summary judgment in which it argues that Georgia law applies to the coverage issues, that under Georgia law the policy at issue provides coverage for remediation B & S conducted pursuant to an EPA Order, and that the EPA Order and EPD Notice of Violation constitute "suits" under the terms of the policy.

## I. Background

Briggs & Stratton conducted electroplating operations at a facility in Perry, Georgia. When the Perry plant closed, B & S transferred certain electroplating chemicals and other substances to Peach Metal Industries, Inc. ("PMI"), at its facility in Byron, Georgia. In 1987 the Georgia EPD began investigating environmental contamination at the PMI site. On February 12, 1991, the EPA issued Administrative Order No. 91–01–C in which it concluded that hazardous substances belonging to and generated by B & S were being disposed of at the site. The EPA directed B & S, along with PMI, its president, and the current and former owners of the site, to clean up the site. The Georgia EPD also issued a Notice of Violation finding B & S to be in violation of Georgia's Hazardous Waste Management Act. B & S subsequently spent approximately $5.2 million cleaning up the PMI site.

Royal Insurance Company of America ("Royal") issued a primary insurance policy to B & S for the period April 1, 1985, to April 1, 1986. Transcontinental issued to B & S Transcontinental Commercial Umbrella Liability Policy No. UMB 169 39 31, an excess coverage policy incorporating the provisions of the underlying Royal policy. The policy provided that Transcontinental would pay for loss in excess of the limits of liability of the underlying insurance policy issued by Royal. The policy contained the following provisions:

> We will investigate and defend any suit brought against you, and pay all costs and expenses of such investigation and defense when:
>
> 1. A claim or suit alleges damages covered under Coverage A [excess liability provision] and when the obligation of all underlying insurance either to investigate and defend you or to the costs of

such investigation and defense ceases solely because of exhaustion of the underlying limits of liability through payments of settlement or judgments....

And,

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage ....

## II.  Discussion

### A.  Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995).

Under the first element, the issue must be genuine, and the factual dispute must be material to the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Materiality" is determined by reference to the substantive law that controls the case. *Id.; Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 590 (11th Cir.), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some metaphysical doubt as to the material facts,' " *Irby,* 44 F.3d at 953 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))—the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 248, 249–50, 106 S.Ct. 2505. The second element—that the movant be entitled to judgment as a matter of law—is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B.  Choice of law

■ The Transcontinental policy provides coverage for sums that B & S is legally obligated to pay as "damages," as well as defense costs associated with a "suit" against B & S. It is not disputed that the Transcontinental policy was delivered to B & S in Wisconsin, where B & S has its headquarters and its principal place of business. The policy was delivered to B & S by one of its insurance agents, Corroon & Black of Wisconsin, Inc., also located in Wisconsin.

■ In a diversity case filed in federal court, the district court applies the choice of law provisions of the jurisdiction where the district court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Generally speaking, the state of Georgia adheres to the rule of *lex loci contractus* in matters involving insurance contracts. *See, e.g., Federal Ins. Co. v. National Distrib. Co.,* 203 Ga.App. 763, 417 S.E.2d 671 (1992). Thus, Transcontinental argues that Wisconsin law applies to the issues as to whether the sums expended by B & S are covered under the policy.

■ Under Wisconsin law, response cleanup costs in response to orders of the EPA or state agencies do not constitute "damages." In *City of Edgerton v. General Casualty Company of Wisconsin,* 184

Wis.2d 750, 517 N.W.2d 463, 477–79 (1994), the court limited the term "damages" to legal compensation for past wrongs or injuries, while defining as equitable relief response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). *See also Hydrite Chemical Co. v. Aetna Casualty & Surety Co.,* 220 Wis.2d 26, 582 N.W.2d 423 (1998). Further, under Wisconsin law, an EPA or state regulatory agency order requiring hazardous site remediation was found not to constitute a "suit" under the policy language providing coverage for a "suit seeking damages."[1] *Edgerton,* 517 N.W.2d at 468.

■ Although B & S does not contest Georgia's general adherence to the rule of *lex loci contractus,* it argues that Georgia's version of the rule under the facts of this case require the application of Georgia law. In *Frank Briscoe Co. v. Georgia Sprinkler Co.,* 713 F.2d 1500 (11th Cir. 1983), the Eleventh Circuit noted the confusion then existing as to the choice of law rule the Georgia state courts followed. The Court nevertheless concluded, that "it is clear that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes.... When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Briscoe,* 713 F.2d at 1503. This provision of Georgia law was explained in *Trustees of Jesse Parker Williams Hospital v. Nisbet,* 189 Ga. 807, 7 S.E.2d 737 (1940), as follows:

> A contract of a foreign State which constituted one of the original thirteen colonies, or which was derived from territory included in one of such colonies, will be construed and governed by the common law, in the absence of any pleading to the contrary.... And in such a case

the construction of the common law given by the courts of this State will control, in preference to the construction given by the courts of the State of the contracts.

Other cases have also held that Georgia's application of another state's laws is limited to its statutes, and that case law or common law of another jurisdiction will not take precedence over the law of this State. *See, e.g., Motz v. Alropa Corp.,* 192 Ga. 176, 15 S.E.2d 237 (1941); *Slaton v. Hall,* 168 Ga. 710, 715, 148 S.E. 741, 743–44 (1929 ).

Transcontinental argues that the Supreme Court of Georgia and the Court of Appeals of Georgia have contradicted *Briscoe,* thus rendering its holding inapplicable, by applying the common law of foreign states even when there was no foreign statute involved. *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 428, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)(in diversity of citizenship cases, the outcome of litigation in federal court should be substantially the same as if in state court, as far as legal rules are concerned); *Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1451 (11th Cir.1991)(federal courts in diversity cases must follow state court decisions that conflict with federal court's earlier rulings). However, a close reading of the cases cited by Transcontinental reveals that none of them disavowed the rule in *Nisbet.*

■ The Georgia Supreme Court ruled in *Menendez v. Perishable Distributors, Inc.,* 254 Ga. 300, 302, 329 S.E.2d 149, 151 (1985), *abrogated on other grounds by Posey v. Medical Center–West, Inc.,* 257 Ga. 55, 354 S.E.2d 417 (1987), that Florida substantive law controlled the contract at issue because the contract was made in Florida. There, in distinction to the in-

---

1. Part I.C. of the Transcontinental policy provides: "We will investigate and defend any suit brought against you and pay all costs and expenses of such investigation and defense...." This provision applies to Transcontinental's responsibility to provide defense costs. The Wisconsin court held that EPA or state orders were not "suits" seeking damages. Transcontinental argues that this holding further bolsters its position that it has no duty to indemnify B & S under the facts of this case, because if there is no duty to defend there could also be no duty to indemnify. *See Edgerton,* 517 N.W.2d at 479.

stant case, the State of Florida had a statute relating to the issue before the court. The U.S. District Court for the Northern District of Georgia ruled in *Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F.Supp. 1577, 1580 (N.D.Ga.1994), and this court agrees, that because Florida had a statute on point, *Menendez* was not inconsistent with Georgia's prohibition against applying another forum's common law. In *Southern Guaranty Insurance Co. v. Central Mutual Insurance Co.*, 214 Ga.App. 662, 449 S.E.2d 3 (1994), the court, stating that "[u]nder the principle of *lex loci contractus*, actions sounding in contract are governed by the substantive law of the place where they were made," applied South Carolina common law to interpret the terms of insurance policies. However, this case is distinguishable in that the parties had agreed to the application of South Carolina law.[2]

In *Travelers Insurance Co. v. McNabb*, 201 Ga.App. 297, 410 S.E.2d 788 (1991), *disapproved in Yoho v. Ringier of America*, 263 Ga. 338, 434 S.E.2d 57 (1993), the insurance policy itself limited coverage to benefits payable under Tennessee law. Further, the *McNabb* court reaffirmed that *Nisbet* was the leading Georgia case on choice of law. Similarly, in *General Tel. Co. v. Trimm*, 252 Ga. 95, 311 S.E.2d 460, 462 (1984), the court affirmed that Georgia continues to adhere to the rule of *lex loci contractus* and that *Nisbet* is the leading case defining such rule. In *Nat. Gen. Ins. Co. v. United Serv. Auto. Ass'n*, 224 Ga.App. 821, 823, 482 S.E.2d 727, 729 (1997), the court also affirmed the rule of *lex loci contractus*. However, in that case the court found that construction of the contract provisions was not an issue. In none of the cases cited by Transcontinental did a Georgia court overrule *Nisbet* or

disavow the rule cited there. Moreover, the continuing validity of *Nisbet* is demonstrated by the Supreme Court of Georgia's statement in *Avnet, Inc. v. Wyle Laboratories, Inc.*, 263 Ga. 615, 437 S.E.2d 302 (1993). In *Avnet*, the court affirmed the trial court's exclusive reliance upon Georgia law, quoting with approval the holding in *Slaton v. Hall*, 148 S.E. at 743, that "where no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such state." Additionally, federal cases have continued to uphold Georgia's construction of *lex loci contractus*. See, e.g., *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 6 (11th Cir.1987); *Bradham v. Randolph Trucking Co.*, 775 F.Supp. 395, 397 (M.D.Ga.1991). Consequently, the court finds that Georgia law controls the interpretation of the Transcontinental policy at issue in this case.

### C. Application of Georgia law

■ The question whether remedial undertakings in response to EPA or state administrative agency orders fit the definition of "damages" under Georgia law was decided in *Atlantic Wood Industries, Inc. v. Lumbermen's Underwriting Alliance*, 196 Ga.App. 196 Ga.App. 503, 396 S.E.2d 541 (1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991). After considering the conflicting holdings on this question in several jurisdictions, the Court of Appeals indicated its agreement with the majority position that "the better reasoned decisions find that the term 'damages' as used in the coverage provisions of liability policies includes the type of expenditures under consideration." *Id.*, 396 S.E.2d at 543, quoting *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 388 S.E.2d

---

**2.** Transcontinental points out that there is included as part of the Transcontinental Policy Form G–1150–B48, entitled "Mandatory Endorsement–Wisconsin," which amends certain conditions of the policy "if this policy is issued or delivered in the State of Wisconsin." Transcontinental argues that the endorsement is an indication that the parties thought that Wisconsin law would govern the interpretation of the policy. However, in this court's view inclusion of the endorsement is not sufficient to indicate an agreement between the parties to apply Wisconsin common law.

557 (1990). The Court of Appeals adopted the reasoning of the court in *Spangler*, holding that:

> Clearly, there is a specific, technical definition for the word ['damages']: "payments to third persons when those persons have a legal claim for damages." [Cit.] If the insurer intended that "damages" have only this meaning, it should have so indicated in the policy. The insured would then have understood that cleanup costs incurred pursuant to government mandate were not covered, and would have been able to enter into other insuring arrangements. Because such a limiting definition was not included in the policy, we must conclude that the parties did not intend "damages" to have a specific technical meaning in the insurance policy. Rather, they intended to use its "ordinary meaning."

*Atlantic Wood Indus.*, 396 S.E.2d at 543, quoting *Spangler*, 388 S.E.2d at 568. This construction of the policies at issue was construed as consistent with general principles of Georgia insurance law, including the principle that "Where a provision in a policy is susceptible to two or more constructions the court will adopt that construction which is most favorable to the insured." *Atlantic Wood Indus.*, 396 S.E.2d at 543, quoting *United States Fire Ins. Co. v. Hilde*, 172 Ga.App. 161, 163(2), 322 S.E.2d 285 (1984). Additionally, the court found its construction consistent with the holding in *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989), that EPA-mandated costs incurred by an owner are within the coverage of a comprehensive general liability policy absent a clear and unambiguous pollution exclusion clause. *Atlantic Wood Indus.*, 396 S.E.2d at 544. Thus, under Georgia law the clean-up costs incurred by B & S are covered by the term "damages" as used in the Transcontinental policy. *See also South Carolina Ins. Co. v. Coody*, 813 F.Supp. 1570, 1575 (M.D.Ga.1993).

■ There are no Georgia cases which rule on the precise issue of whether an EPA order or EPD notice of violation constitute a "suit" under Georgia law.

However, this court is in agreement with *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 926 F.Supp. 1566 (S.D.Ga. 1995), *rev'd on other grounds*, 150 F.3d 1327 (11th Cir.1998), in which the U.S. District Court for the Southern District of Georgia found such letters to be substantially equivalent to a "suit" and within the intended meaning of the term "suit" as used by the insurance contracts involved in that case. *Id.*, 926 F.Supp. at 1582. As was true with the definition of "damages" adopted by the Georgia courts, the inclusion of such EPA or EPD orders within the definition of "suit" is consistent with the policy in Georgia law that "the risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer." *Atlantic Wood Indus.*, 396 S.E.2d at 543.

### III. Conclusion

For the reasons stated herein, the court holds that (1) interpretation of Transcontinental Commercial Umbrella Liability Policy No. UMB 169 39 31 is governed by Georgia law; (2) under Georgia law the remediation conducted by B & S in response to the EPA Order and the EPD Notice of Violation are "damages" under the policy; and (3) the EPA Order and EPD Notice of Violation are "suits" under the policy.

Accordingly, the motion of plaintiff B & S for partial summary judgment is **GRANTED**. The motion of defendant Transcontinental for partial summary judgment is **DENIED**.