[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-14419

_____

D. C. Docket No. 1:95-CV-114-2

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2000
THOMAS K. KAHN
CLERK

YORK INSURANCE COMPANY,

Plaintiff-Appellee,

versus

WILLIAMS SEAFOOD OF ALBANY, INC.,
WEBB PROPERTIES, INC., and
OXFORD CONSTRUCTION COMPANY, INC.

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 18, 2000)**

Before TJOFLAT, WILSON and FLETCHER*, Circuit Judges.

_____

*Honorable Betty B. Fletcher, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

WILSON, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

Williams Seafood of Albany, Inc., Webb Properties, Inc., and Oxford Construction Company, Inc. ("Williams") appeal a declaratory judgment granted to York Insurance Company ("York") after a bench trial. Since the dispositive question is unsettled under Georgia law, we certify its resolution to the Georgia Supreme Court.

## I. BACKGROUND

York issued a policy of insurance to Williams covering Williams's restaurant. The policy excluded losses or damage stemming directly or indirectly from floods, but specifically covered losses stemming from sinkhole collapses. Sometime during or immediately after a flood, Williams's building collapsed into a sinkhole and suffered a total loss. Williams filed a claim with York for the loss, which York denied because its investigation revealed that the loss was caused directly or indirectly by the flood. York then sued for a declaratory judgment that

2

the loss was not covered, and Williams counterclaimed seeking coverage for its loss.

The parties agreed that the sinkhole collapse caused the property damage, but disputed whether the flood contributed to the sinkhole collapse. The district court ruled that the policy clearly excluded coverage for any damages resulting from flood, and held a bench trial to determine whether the flood directly or indirectly caused Williams's claimed loss. After trial, the district court found that the "greater weight" of trial testimony and evidence "supports the finding that the loss suffered by [Williams] was directly or indirectly caused by flood water . . . ." Therefore, the court granted York a declaratory judgment absolving York of all liability for Williams's collapsed building loss. Williams appeals.

## II. DISCUSSION

This case turns on whether the insurance policy's flood exclusion trumps its additional sinkhole collapse coverage provision. Several principles of contract construction under Georgia law guide this inquiry. First, the insurance policy should "be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 498 S.E.2d 492, 494 (Ga. 1998). If the terms of an insurance contract are "unambiguous, clear, and capable of only one reasonable

3

construction, they must be taken in their plain, ordinary and popular sense as may be supplied by common dictionaries." *Lemieux v. Blue Cross & Blue Shield*, 453 S.E.2d 749, 751 (Ga. Ct. App. 1995). In construing the policy, "[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *United States Fire Ins. Co. v. Hilde*, 322 S.E.2d 285, 288 (Ga. Ct. App. 1984) (citations omitted).

If, however, an insurance policy is confusing to a layman, the policy is ambiguous. *See Isdoll v. Scottsdale Ins. Co.,* 466 S.E.2d 48, 50 (Ga. Ct. App. 1995). If a policy is ambiguous, the policy shall be construed against the drafter. *See id*. York bears the burden of proving that the flood exclusion applies. *See Nationwide Mut. Fire Ins. Co. v. Rhee*, 287 S.E.2d 257, 260 (Ga. Ct. App. 1981). "Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Alley v. Great Am. Ins. Co.*, 287 S.E.2d 613, 616 (Ga. Ct. App. 1981). "[E]xclusions will be 'strictly construed against the

insurer and in favor of coverage.'" *Quesada v. Director, FEMA*, 753 F.2d 1011, 1014 n.4 (11th Cir. 1985) (citations omitted).

The conflicting insurance policy sections are as follows:

B.    EXCLUSIONS

1.    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

g.    Water

(1)    Flood, surface water. . . .

. . . .

D.    ADDITIONAL COVERAGE - COLLAPSE
We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1.    The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part. . . .

. . . .

F.    DEFINITIONS
"Specified Causes of Loss" means the following:  . . . sinkhole collapse . . . .

1.    Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

Several interpretations of the conflicting policy provisions are reasonable. Williams urges us to rule that the "additional coverage" provision is additional to and separate from the other portions of the contract (namely, the Section B exclusions). Therefore, losses stemming from a sinkhole collapse always would be covered, no matter what contributed to the sinkhole collapse. York, on the other hand, argues that losses stemming from a flood are always excluded as per Section B(1), even if the flood merely contributes to an otherwise covered cause (such as a sinkhole collapse). Thus, according to York, the Section B flood exclusion and the Section D sinkhole collapse coverage provisions do not even conflict; flood damage is always excluded, but sinkhole collapse damage is only covered if no excluded causes contributed to the sinkhole collapse.

Each argument, although plausible, has potential weaknesses. For example, if Williams prevails, the policy exclusion for losses stemming from floods is arguably rendered superfluous. Alternatively, if the insurer prevails, the additional sinkhole collapse coverage is worth nothing, since all sinkholes could arguably be blamed on some excluded precipitating cause (no matter how remote).

Williams argues that *Ovbey v. Continental Ins. Co.*, 613 F. Supp. 726 (N.D. Ga. 1985), *aff'd* 782 F.2d 178 (11th Cir. 1986) (without opinion) controls. In *Ovbey*, the court looked to the immediate and proximate cause of the collapse of

6

the building to determine whether the loss was covered. Applying *Ovbey* to the facts at hand, the sinkhole collapse was the proximate cause, and the flood was a contributory cause. Hence, the loss would be covered.

York distinguishes *Ovbey* on the ground that the policy in *Ovbey* did not contain the critical language found in the present policy, to wit: "Such [flood] loss or damage is excluded **regardless of any other cause or event that contributes concurrently or in any sequence to the loss**." (emphasis added). York instead points to *Underwood v. United States Fidelity & Guar. Co.*, 165 S.E.2d 874 (Ga. Ct. App. 1968) to support its position that policy exclusions must be given effect even if other causes contribute to the loss. However, in *Underwood*, no "additional coverage" provision conflicted with the exclusion provision, as with the present situation. Thus, no Georgia caselaw definitively answers the question before us.

Because there is no controlling Georgia law on this issue, we certify the following question to the Georgia Supreme Court: **Where the "exclusions" section of an insurance policy excludes coverage for damage resulting directly or indirectly from floods, but the "additional coverage - collapse" section specifically includes sinkhole collapse damage, does the policy cover damage produced by a sinkhole collapse that was precipitated by a flood**?

### III. CONCLUSION

7

We certify the above-styled question to the Georgia Supreme Court. The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by this case. This extends to the Supreme Court's restatement of the issues and the manner in which the answer is given. To assist the Supreme Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia.

**QUESTION CERTIFIED.**