**In the matter of DURANGO GEORGIA PAPER COMPANY, DURANGO GEORGIA CONVERTING CORP., and DURANGO GEORGIA CONVERTING, LLC, Debtor.**

No. 02–21669.

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

Aug. 5, 2005.

595

Kate Strain, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Debtor.

***MEMORANDUM AND ORDER ON OB-JECTION FILED BY ENVIRON-MENTAL PROTECTION DIVISION OF GEORGIA DEPARTMENT OF NATURAL RESOURCES AND MO-TION TO INTERVENE FILED BY GEORGIA CONSERVANCY ET AL.***

LAMAR W. DAVIS, JR., Bankruptcy Judge.

On May 11, 2005, Debtor filed a motion to establish auction and bidding procedures in connection with the sale of Debtor's assets. On May 20, 2005, after a

hearing to which no objections were filed, this Court entered an order granting Debtor's motion and establishing bidding procedures ("Bidding Procedures Order") which would have culminated in an auction of the premises on July 18, 2005. Due to unforeseen delays and difficulties in obtaining the necessary environmental and other due diligence information for prospective bidders, Debtor filed a motion seeking an amendment to the Bidding Procedures Order on June 17, 2005. The motion requested the auction be delayed until December of 2005. The Court granted that motion subject to the right of interested parties to object by June 30, 2005. The Environmental Protection Division of the Georgia Department of Natural Resources ("State") filed a limited objection to the portion of the Bidding Procedures Order which provided that Debtor's water rights were to be offered for sale at the auction. This Court held a hearing to consider this and other objections on July 8, 2005.

The State contends that the groundwater located beneath the surface of Debtor's real estate is not an asset of Debtor or the bankruptcy estate, and for that reason, the groundwater cannot be auctioned. The State further contends that the only rights which Debtor has are those granted under a permit to withdraw an annual average of 40,000,000 gallons of water from the Floridian aquifer. It argues that the permit expires on December 31, 2005, and is for the sole purpose of processing water for pulp and paper manufacture. Although the permit is renewable at the request of the licensee, Durango Paper, any new owner of the land must commence a new permit application process even if they purchased one of the water lots at auc-

tion.[1] The request for the permit would be reviewed and either granted, denied or modified by the State under applicable provisions of Georgia law and regulations, regardless of whether the applicant purchased a water lot at the auction. As a result, the State contends that Debtor has no water rights to sell and that any reference to the sale of water rights should be stricken from the Bidding Procedures Order.

A consortium of public interest and environmental organizations ("Public Interest Groups") filed an objection similar to the State's objection and a Motion to Intervene in this matter. At the hearing, the Court ruled that the Motion to Intervene would be held in abeyance, but in the interest of judicial economy, the Court permitted counsel for those groups to appear and present their position.

 I now deny the Motion to Intervene on an interim basis. Federal Rule of Bankruptcy Procedure 2018 provides, "after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." A party seeking intervention must show "cause," such as an economic interest in the case or a concern with the precedential ramifications of a ruling. *See In re Ionosphere Clubs Inc.*, 101 B.R. 844, 853 (Bankr.S.D.N.Y.1989). Intervention is discretionary, and it should not be permitted if the intervenor's rights are already adequately represented or intervention would result in delay or prejudice. *In re City of Bridgeport*, 128 B.R. 686, 688 (Bankr.D.Conn.1991). In the case before the Court today, the State of Georgia has asserted objections, which are mirrored by those of the Public Interest Groups, and

---

**1.** If an entity purchases the property with the intent to operate a paper mill, the State may transfer Debtor's permit for the same use; thereby rendering any conclusion regarding ownership of the groundwater moot.

the State is pursuing them vigorously. As a result, there is no cause, at this time, to grant the Motion to Intervene. The Public Interest Groups may reassert their Motion to Intervene in the future if circumstances change and the State no longer adequately represents their interests.

In response to the State's objection, Debtor contends that, as the owner of the real estate, Georgia law grants it fee simple ownership of the groundwater which lies beneath the surface of its real estate. Debtor concedes that its ownership of that water is subject to reasonable regulation by the State, but it disputes the State's claim that Debtor does not maintain an element of ownership in water lying beneath the surface which the bankruptcy estate now has the right to offer for public sale. Debtor further argues that the Bidding Procedures Order expressly qualifies any sale of the water rights by containing the following language:

> Sale and assignment of water rights is subject to approval and confirmation by the Georgia Department of Natural Resources.

Debtor asks the Court to include the same qualifying language [2] in its amended order so that a bidding party understands that any water lots purchased from Debtor are subject to the State's legitimate regulatory interests. For the reasons set forth herein, I overrule the State's objection to the inclusion of water rights as an asset which will be offered for bids at the public auction, subject to State regulation.

 It is important to clarify that neither the motion to establish bidding procedures nor the objection raised by the State is the proper vehicle for this Court to make a final determination of the full extent or the value of any interest that Debtor has in this groundwater. The Bidding Procedures Order is procedural in nature. It merely establishes a process whereby interested parties may examine what Debtor offers for sale, conduct the necessary due diligence, and participate in a public auction process. If there is a legal dispute over the ownership of the groundwater or the title to any property remaining after the auction, then that issue will be addressed under the Code in a contested matter or an adversary proceeding to determine the extent, validity and priority of an interest in property. *See* Federal Rule of Bankruptcy Procedure 7001(2).

Section 363(f)(4) provides clear authority to sell property to which a third party asserts an adverse claim. It reads, "[t]he trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if ... such interest is in bona fide dispute ...." Although the phrase "bona fide dispute" is not defined in the Bankruptcy Code, one court held that it "exists when there is an objective basis for either factual or legal dispute as to the validity of an interest in property." *In re Robotics Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr.D.N.H.2005)(citing *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill. 1991)). Section 363(f)(4) allows the sale of property subject to dispute "so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." *In re Gulf States Steel, Inc.*, 285 B.R. 497, 507 (Bankr.N.D.Ala.2002)(quoting *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (9th Cir. BAP 2001)). As discussed below, there is a bona fide dispute

---

**2.** At the conclusion of the hearing, I ordered Debtor and the State to confer and propose more comprehensive language on this subject without a waiver of any rights they may have to litigate this issue in the future. That language was submitted to the Court and now appears in the Modified Bidding Procedures Order.

regarding the ownership of the groundwater.

To summarize the dispute succinctly, there is a clear and unambiguous provision in Georgia law which supports Debtor's position in this matter. In its entirety, O.C.G.A. § 51–9–9 provides:

> The owner of realty has title downwards and upwards indefinitely; and an unlawful interference with his rights, either below or above the surface, gives him a right of action.

This is a clear grant of title to the owner of real estate to that which is found beneath the surface of the real estate. It does not by its terms exclude from the scope of that grant anything which lies beneath the surface, including groundwater. This provision extends back to at least 1863, but it has been readopted and codified in every Code since.

Moreover, this Section has been interpreted in a modern case by the Supreme Court of Georgia in such a manner as to make it clear that the court regards this language as establishing a property interest in groundwater. *Boardman Petroleum, Inc., v. Federated Mut. Ins. Co.*, 269 Ga. 326, 498 S.E.2d 492 (1998). In *Boardman*, the court answered a certified question presented by the Eleventh Circuit Court of Appeals regarding an unsettled issue of Georgia law relating to insurance coverage. The Eleventh Circuit asked whether an insurance company was liable to a property owner for contamination clean-up costs for the groundwater lying beneath the surface of the property or whether the insurance company's liability for these costs was excluded from coverage because the groundwater was "owned or occupied by or rented to the insured" ("owned property exclusion").

In concluding that the exclusion applied and that there was no coverage to the property owner for these costs, the Supreme Court of Georgia unambiguously held "Georgia law provides that a property owner owns everything that is above and below his real estate." *Id.* at 495 (citing O.C.G.A. §§ 44–1–2, 51–9–9). The court distinguished *Claussen v. Aetna Cas. & Sur. Co.*, 754 F.Supp. 1576 (S.D.Ga.1990), which held that a Florida property owner had coverage for clean-up costs for the groundwater beneath his property despite the "owned property exclusion," "because a Florida property owner does not own the groundwater beneath the property." *Boardman*, 498 S.E.2d. at 495. Rather, *Boardman* cited with approval *American States Ins., Co. v. Hanson Indus.*, 873 F.Supp. 17, 24 (S.D.Tex.1995), which applied principles of private ownership of groundwater similar to those of Georgia and held that an "owned property exclusion" barred coverage for groundwater contamination on the insured property owner's site. *Boardman*, 498 S.E.2d at 495. The Georgia court concluded "the same law is applicable here—contamination of on-site groundwater alone is damage *to the insured's own property.*" *Id.* at 495 (emphasis added).

■ Based on the clear and unambiguous language of O.C.G.A. § 51–9–9 and *Boardman*, I conclude that Durango, as the property owner, has at minimum, a bona fide claim of ownership to everything that is above and below its property including the groundwater lying beneath the surface.

The Georgia Legislature has adopted statutes which specifically relate to groundwater. The General Assembly enacted the Groundwater Use Act of 1972 ("the Act"). O.C.G.A. §§ 12–5–90 to 107. The Act establishes a regulatory permit system applicable to groundwater users that trigger certain thresholds. The Act prohibits withdrawal of groundwater in ex-

cess of 100,000 gallons per day unless the owner obtains a permit from the Environmental Protection Division. O.C.G.A. § 12–5–96. In so doing, the Act imposes reasonable use standards for groundwater withdrawals if they exceed the threshold amount and are subject to the permitting process. The case before the Court today has aroused consternation on the part of the State and environmental groups who apparently believe that the Act operates in complete derogation of O.C.G.A. § 51–9–9 and grants the rights to subsurface groundwater, not to the owner of the real estate, but to the State of Georgia acting on behalf of the citizens of the State.

At this time and in this procedural posture, I am unable to conclude that the Groundwater Use Act does any such thing. There is no express repeal of the language of O.C.G.A § 51–9–9 in the Groundwater Use Act or any subsequent act of the legislature, nor are the code sections at odds in such a manner that the later statute on a more specific subject can be deemed to have repealed the earlier statute by implication. *See Branch v. Smith,* 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003)("An implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict' or where the latter Act covers the whole subject of an earlier one and 'is clearly intended as a substitute.' ")(citing *Posadas v. Nat'l City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936)). The United States Supreme Court wrote, "when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). The Georgia statutes in question can be read in harmony with one another. Section 51–9–9, as interpreted by the Supreme Court of Georgia, grants a property interest to a real property owner in everything that lies beneath

the surface, including groundwater, and the Groundwater Use Act imposes upon that ownership right certain regulatory limits. The sections can co-exist with one another, just as local zoning laws and ordinances are superimposed on real property owners' otherwise unfettered right to develop their real estate as they choose. The zoning ordinance does not strip the owner of title, but it does subject it to reasonable regulation.

Pursuant to the foregoing, I conclude that for the purposes of the Bidding Procedures Order, Debtor has an asset of indeterminate value which is an asset of the bankruptcy estate and can be offered for sale in the manner provided. The Bidding Procedures Order clearly contemplates the adverse claim of the State and does not deprive the State of any of its regulatory powers. Further, neither this Memorandum or any other order precludes the State or Debtor from contesting the ownership or use of the groundwater, if that issue is justiciable after the auction. Accordingly, by separate order I will grant Debtor's Motion for Modified Bidding Procedures.

*ORDER*

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Public Interest Groups' Motion to Intervene is DENIED without prejudice.

The Objection of the Environmental Protection Division of the Georgia Department of Natural Resources is OVERRULED.

The Modified Bidding Procedures Order will be entered separately.