Cindy Barrett **GARNETT**, Plaintiff,

v.

**WRP ENTERPRISES, INC.** & Revmax, Inc. d/b/a Thrifty Car Rental, and Philadelphia Indemnity Insurance Company, Defendants,

Of whom Philadelphia Indemnity Insurance Company is the, Appellant,

and

Cindy Barrett Garnett, WRP Enterprises, Inc. & Revmax, Inc. d/b/a Thrifty Car Rental are the, Respondents.

No. 4095.

Court of Appeals of South Carolina.

Submitted Feb. 1, 2006.

Decided March 20, 2006.

550

James Edward Bradley, of West Columbia, and James E. Green, Jr. and Mark E. Dreyer, both of Tulsa, OK, for Appellant.

Nelson Russell Parker, of Manning, and William Pearce Davis, of Columbia, for Respondents.

GOOLSBY, J.

Cindy Barrett Garnett brought this declaratory judgment action to determine the amount of liability insurance available to a Thrifty Car Rental customer who collided with a vehicle in which Garnett was riding. The trial court found Philadelphia Indemnity Insurance Co.,[1] the rental company's commercial liability carrier, was responsible for coverage. Philadelphia appeals, arguing the trial court erred in interpreting the clear terms of the insurance policy, in failing to consider the entire contract, and in ignoring relevant parol evidence in the event the contract is deemed ambiguous. We affirm.[2]

## FACTS

At the time this action arose in 1999, WRP Enterprises, Inc. and Revmax, Inc., d/b/a Thrifty Car Rental, (collectively, "Thrifty") owned and operated a Thrifty Car Rental agency in Savannah, Georgia.

Thrifty purchased a commercial lines insurance policy from Philadelphia Indemnity Insurance Company that provided liability coverage for their rental vehicles for the period of June 1, 1999 to June 1, 2000. The policy contains a "Dual Interest Endorsement," which provides for differing rates of liability

1. Philadelphia Indemnity Insurance Company is also referred to as the "Philadelphia Insurance Company" in some of the trial records, but all parties state in their briefs that this is a misnomer. Further, Philadelphia Indemnity Insurance Company is the name listed on the insurance policy that is the subject of this appeal.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

coverage depending on the amount of insurance provided by the automobile rental contract:

> It is hereby understood and agreed that Item Two—"Schedule of Coverages and Covered Autos—Liability Limit, The most we will pay" of the Business Auto Coverage Form Declarations is amended to read as follows:
>
> > When the Insured's rental contract provides the renter with minimum state financial responsibility limits, the following limits of liability are applicable to this policy:
> >
> > | | |
> > |---|---|
> > | Bodily Injury Liability | $15,000.00 each person |
> > | | $30,000.00 each accident |
> > | Property Damage Liability | $10,000.00 each accident |
> >
> > When the rental contract provide[s] the renter with limits in excess of the minimum state financial responsibility laws, the following limits of liability are applicable to this policy:
> >
> > | | |
> > |---|---|
> > | Bodily Injury Liability | $100,000.00 each person |
> > | | $300,000.00 each accident |
> > | Property Damage Liability | $50,000.00 each accident |

On or about July 10, 1999, while this policy was in effect, Bierdie L. Williams rented a car from Thrifty in Savannah, Georgia. Williams's rental contract indicates that she purchased optional Supplemental Liability Insurance (SLI) coverage and paid a daily premium of $8.95. This premium was to provide Williams with excess liability coverage against third-party claims up to a limit of $1,000,000; it was supplemental coverage for the difference between the amount under the state minimum financial responsibility law and $1,000,000.[3]

---

3. Section 10(A)(1) and (2) of Williams's rental contract provided the following regarding SLI coverage:

Footnote 3 continued:

> 10. OPTIONAL SUPPLEMENTAL LIABILITY INSURANCE (WHERE AVAILABLE).
>
> A. Where available, and for an additional daily charge, if I have initialed that I accept the optional SLI at the beginning of the rental, I am entitled to the following:
>
> 1. Thrifty will protect Me against third-party liability claims arising out of the use or operation of the Car for (i) bodily injury or death of another (excluding any of My or Additional Renter's family members related by blood or marriage or adoption residing with Me or them) and (ii) Property damage other than to the Car. This protection is limited to an amount equal to the minimum limits specified by the compulsory insurance or financial responsibility laws relating to

While driving the Thrifty rental car in South Carolina, Williams struck a vehicle in which Garnett was a passenger. Garnett subsequently brought an action against Williams for injuries she allegedly sustained in the accident.

Garnett brought this declaratory judgment action against Thrifty and Philadelphia, seeking a determination of the amount of liability insurance coverage available on Williams's rental vehicle. Philadelphia contended only the minimum limits of $15,000/$30,000/$10,000 (i.e., $15,000 bodily injury per person, $30,000 bodily injury per accident, and $10,000 property damage per accident) are available to Williams. Thrifty contended that, pursuant to the Dual Interest Endorsement, Williams was entitled to liability limits of $100,000/$300,000/$50,000 because the rental contract provided for limits in excess of the minimum state financial responsibility law. Both Philadelphia and Thrifty moved for summary judgment.

The trial court granted Thrifty's motion for summary judgment, finding the unambiguous terms of the insurance policy mandated the higher limits of coverage. The court ruled the rental contract between Thrifty and Williams provided for coverage over the minimum imposed by the state financial responsibility law, thus invoking the higher coverage of $100, 000/$300,000/$50,000 pursuant to the Dual Interest Endorsement in the Philadelphia policy that insured Thrifty. Philadelphia appeals.

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue."[4] An action to construe a contract is at law.[5] In an

---

automobile liability insurance in the state in which the Car is rented and shall be referred to as Primary Protection; and,

2. SLI provides Me with a separate policy providing excess coverage against such claims for the difference between the Primary Protection and a maximum combined single limit of $1,000,000 (U.S.) per occurrence for bodily injury, including death and property damage, for other than the Car while the Car is on rent to Me.

4. *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).

5. *Id.*

action at law, the trial court must be affirmed when there is "any evidence" to support the court's findings.[6]

Under the South Carolina Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [7]

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." [8] "In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party." [9]

## LAW/ANALYSIS

On appeal, Philadelphia argues the trial court erred in finding it is required to provide coverage of $100,000/$300,000/ $50,000 on the rental vehicle. Philadelphia asserts the court erred in interpreting the clear terms of the insurance policy, in failing to consider the entire contract, and in ignoring relevant parol evidence in the event the contract is deemed ambiguous. We disagree.

"Unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made." [10] In the case before us, the trial court found the

6. *Id.* (citing *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976)).

7. Rule 56(c), SCRCP.

8. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); *see also Baird v. Charleston County*, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999) ("Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.").

9. *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).

10. *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551–52, 436 S.E.2d 182, 184 (Ct.App.1993).

vehicle rental was entered into in Georgia; therefore, Georgia law applies.[11]

"Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction." [12] " 'Three well known rules ... apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.' " [13] "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." [14]

Philadelphia asserts the higher limits of coverage in the Dual Interest Endorsement are not triggered here because the rental contract "clearly" states that the SLI is to be provided under a "separate policy"; therefore, excess coverage was not provided for in the rental contract itself. Alternatively, Philadelphia asserts that it is undisputed that, at the time Williams executed the rental contract, Thrifty did not maintain an SLI policy with Philadelphia or any other carrier.

We find no error in the trial court's ruling. The Dual Interest Endorsement provision clearly and unambiguously states that "[w]hen the Insured's *rental contract* provide[s] the renter with *limits in excess* of the minimum state financial responsibility laws," the bodily injury limits are $100,000 for each person and $300,000 for each accident, and the property damage limit is $50,000 per accident. [Emphasis added.] The rental contract in this case provides that renters who accept

11. No one disputes the court's determination that Georgia law applies. We note, however, as did the trial court, that Georgia and South Carolina law regarding the interpretation of a contract are virtually identical. Thus, if South Carolina law applied, the analysis would be the same.

12. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 498 S.E.2d 492, 494 (Ga.1998).

13. *Id.* (quoting *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 299 S.E.2d 561, 563 (Ga.1983)) (citations omitted in original).

14. *Id.*

SLI coverage for an additional daily charge are "entitled to" protection against third party liability claims equal to the minimum limits in Georgia, "and [ ] SLI provides [the renter] with a separate policy providing excess coverage" up to $1,000,000.

Williams accepted and paid for SLI from Thrifty; thus, Thrifty, through the rental contract, agreed to provide Williams with limits in excess of the minimum state financial responsibility law. The fact that the rental contract states a separate policy is the source of the insurance does not negate the fact that the rental contract was the mechanism by which Thrifty became obligated to provide additional coverage. Further, although Thrifty admits its employee was not authorized to sell SLI because Thrifty did not have a carrier for a policy at that time, this does not change our analysis. Thrifty obligated itself to provide supplemental coverage, regardless of whether it was through an insurance policy or out-of-pocket. Thrifty's counsel acknowledged this point at the hearing: "[T]here is no question but having sold [Williams] that coverage, we must provide it. . . . [T]he rental contract provides that she's purchased a million dollars in single limit coverage . . . [a]nd she paid for it. So there is no question but that it's there." Thus, regardless of the source of the coverage, Thrifty's rental contract with its customer does, on its face, provide for coverage in excess of the minimum financial responsibility law. This, in turn, triggers the higher coverage in the policy Thrifty carried with Philadelphia on its fleet of vehicles. Accordingly, we find the trial court did not err in holding Philadelphia is responsible for providing coverage on the rental vehicle of up to $100,000/$300,000/$50,000.[15]

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.

---

15. Having found there is no ambiguity in the provisions in question, we need not address Philadelphia's remaining argument in this regard.