[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10863

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-01745-ODE

ASPHALT REFINING & TECHNOLOGY COMPANY, LLC,

Plaintiff - Appellant,

versus

UNDERWRITERS AT LLOYD'S LONDON,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 26, 2011)

Before WILSON and PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

PER CURIAM:

Asphalt Refining & Technology Company, LLC ("Asphalt"), appeals a

_____

*Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

series of orders entered by the district court in favor of its property insurance carrier, Underwriters at Lloyd's London ("Lloyd's"). For the following reasons, we affirm.

I.

Asphalt, a manufacturer and marketer of asphalt for paving and roofing, began operating in 2005 and is located on the former site of an oil refinery. Asphalt had various tanks and equipment on its property that were previously used as part of the oil refinery, and Asphalt refurbished sixteen of them for its own use.

On December 1, 2006, after some negotiations between the parties' brokers, Asphalt and Lloyd's entered into an insurance binder. On December 13, 2006, an explosion and fire caused damage to certain tanks, buildings, and equipment on Asphalt's property. The next day Lloyd's issued an insurance policy covering Asphalt's property, with an effective date of December 1, 2006, the date of the binder. Although the issuance of the policy post-dates the loss, insurance binders "include all the usual terms of the policy as to which the binder was given . . . ." O.C.G.A § 33-24-33. The parties agree the effective date of the policy was December 1, 2006, and the fire was a "Covered Cause of Loss" as the term is defined in the policy. The policy contained a coinsurance penalty clause. Lloyd's applied the coinsurance penalty clause and refused to pay Asphalt's claim under the

2

policy in full.

The core of the parties' dispute is whether Asphalt's coverage for "Tanks & Equipment" was meant to apply to all tanks on Asphalt's property or to only the sixteen tanks in use. If only the sixteen refurbished tanks were insured, a completely different, and far smaller, coinsurance penalty would apply.

The parties filed cross motions for partial summary judgment. The district court reviewed a great deal of evidence submitted by Asphalt but ultimately concluded that the term "tanks" is unambiguous and granted summary judgment in favor of Lloyd's, holding that "Lloyd's was contracted to insure all of the tanks on Asphalt's property at the time of the fire." Therefore, the district court ruled that any evidence submitted by Asphalt to show the parties intended 16 tanks to be covered constituted inadmissable parol evidence and could not be used to modify the contract. Asphalt appeals, arguing that summary judgment for Lloyd's was inappropriate because the term "tanks" is ambiguous. Asphalt also makes two other arguments; neither is meritorious, and we address them briefly below.

II.

We review a grant or denial of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmovant. *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1509 (11th Cir. 1997). Summary

3

judgment is proper when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

Because we have diversity jurisdiction over this case, *see* 28 U.S.C. § 1332(a), we must apply Georgia law in construing the insurance contract. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Am. Family Life Assurance Co. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) ("Under Georgia choice-of-law rules, interpretation of insurance contracts is governed by the law of the place of making."). Under Georgia law, an insurance policy is governed by the ordinary rules of contract construction. *Boardman Petroleum v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. Ct. App. 1998). Absent ambiguity, construction of a written contract is a question of law for the trial court. *Wilbanks v. Mai*, 501 S.E.2d 513, 514 (Ga. Ct. App. 1998).

### III.

Asphalt contends that summary judgment for Lloyd's was inappropriate because the "summary judgment evidence, at the least, creates ambiguity and a question of fact regarding the intention of the parties concerning which 'tanks' were intended to be insured by the insurance contract." We disagree.

"Ambiguity" in a contract is defined as duplicity, indistinctness, or uncertainty of meaning or expression. *Taylor v. Estes*, 70 S.E.2d 82, 84 (Ga. Ct.

4

App. 1952) (citing another source).  Where a term or phrase of an insurance contract is "susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous . . . ." *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996).  "Under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning." *Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 687–88 (Ga. 1989) (citing O.C.G.A. § 13-3-2 (2)).

An insurance binder is not a mere offer but is itself a contract of insurance, temporary in nature, "intended to take the place of an ordinary policy until the same can be issued." *Jourdan v. First Nat'l Ins. Co.*, 416 S.E.2d 162, 162 (Ga. Ct. App. 1992) (internal quotation marks omitted) (citing and quoting another source). While "the hallmark of contract construction is to ascertain the intention of the parties," where "the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to [determine] the parties' intent." *Park 'N Go v. U.S. Fid. & Guar. Co.*, 471 S.E.2d 500, 503 (Ga. 1996).

The meaning of the term "tanks" is plain and obvious.  Neither the binder nor the signed insurance application contain any qualifying language specifying *how many* tanks, or *which* tanks, were insured.  Both of these documents—the binder and signed insurance application—specified that coverage was for "Tanks

5

& Equipment." It would be impossible to construe the written term "tanks" as meaning only "sixteen tanks" without resorting to parol evidence. But parol evidence is inadmissible to create an ambiguity where none exists. *Perrett v. Dollard*, 338 S.E.2d 56, 57 (Ga. Ct. App. 1985). The district court found there is only one reasonable interpretation of the term "tanks," and on *de novo* review, considering the evidence in the light most favorable to Asphalt, we agree.

IV.

Asphalt next argues that the district court abused its discretion by denying Asphalt's motion to amend its complaint to add a claim for equitable reformation of the insurance contract. We disagree because Asphalt moved to amend more than one year after the deadline for filing amendments set by the court in its scheduling order, well after the close of discovery, and after the court granted Lloyd's motion for partial summary judgment. *See Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) ("[I]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions."). Moreover, Asphalt failed to demonstrate "good cause" to amend the scheduling order as required by Fed. R. Civ. P. 16(b)(4) because it was aware of the predicate facts supporting equitable reformation long

before the deadline for amendments. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009) (per curiam) (noting that the "good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension") (internal quotations omitted).

## V.

Finally, Asphalt contends that the district court abused its discretion by refusing to let it change its theory of recovery. Through pleadings and discovery, Asphalt proceeded under a replacement-cost theory. Then, three days before trial, Asphalt altered its argument to that of an actual-cash-value theory. Lloyd's filed a pretrial motion to bar Asphalt from asserting an actual-cash-value theory of recovery at trial, which the court granted. Asphalt presented no excuse for its tardiness in identifying this alternate theory, and allowing Asphalt to change its theory of recovery would have prejudiced Lloyd's. Thus, the district court did not abuse its discretion in granting Lloyd's motion.

## VI.

For the forgoing reasons, we affirm.

**AFFIRMED.**